Mastin v. Halley, et al. .

————o————

JOHN J. MASTIN, Defendant in Error, *vs.* GEORGE HALLEY, *et al.*, Plaintiffs in Error,

1. *Acknowledgment, defective—How taken advantage of.*—Only purchasers for value can take advantage of a defective acknowledgment.

2. *Equity—Defective conveyance—Those holding under vendor must make good, when.*—Equity will interpose for the relief of one who has taken a defective conveyance, and will compel the vendor and those claiming under him by the act of the law, although without notice, and even purchasers for a valuable consideration, if with notice, to make good the conveyance.

3. *Contract on consideration of erecting certain building—Specific performance will not lie—Pre-requisites to such action.*—An action will not lie for the specific performance of a contract to convey land, where the consideration named is that the purchaser shall erect thereon "a certain building," without any further description. Such contract lacks essential pre-requisites on which to found the action. The consideration is not mutual, and by reason of its uncertainty the contract cannot be performed. And equity will not enforce a building contract.

4. *Defective deed—What equity required of one claiming under.*—One claiming under a defective deed is in the position of the assignee of a title bond, and in suit to obtain the legal title the obligation upon him is equally imperative to perform all the acts required to be done in order to obtain equitable relief.

*Error to Jackson County Circuit Court.*

*Gage & Ladd*, for Plaintiffs in Error.

I. Defendant Halley had no notice as to Lawton's possession, for he never took possession. And the record of the deed to Lawton afforded no notice of infirmities in the instru-

ment. If it showed anything it showed an unexecuted consideration.

II. Plaintiff has no equity. The houses which Lawton was to erect should have been completed within a reasonable time. It is now too late to comply with that agreement. As affecting the principal matters involved in this case, see Delavan vs. Duncan, 49 N. Y., 485 ; Hamilton vs. Elliott, 58 Kan., 385.

*F. M. Black*, for Defendant in Error.

I. The conveyance from Hubbard to Lawton, although not sealed, passed all his interest in equity, and is good so as to bind the land conveyed in the hands of the grantor, his heirs and purchasers with notice ; and a court of equity will decree the title to the holder of the equitable title, or what would be the same, correct the conveyance. (Wadsworth vs. Wendell, 5 Johns. Chy., 225 ; 2 Sugd. Vend. & P., t. p. 547, b. p. 1023 ; McClurg vs. Phillips, 49 Mo., 316.)

II. The instrument is in the form of a deed, and purports to be signed and sealed, and on its face shows the mistake. (Wadsworth vs. Wendell, 5 Johns. Chy., 225.)

III. The registration laws apply to every instrument in writing whereby any real estate is conveyed or may be affected in law or equity—and this instrument, though not sealed, was properly recorded, and the record thereof imparts notice. (R. C. 1855, vol. 1, p. 358, § 16 ; *Id.*, §§ 40, 41, 42, p. 364 ; McClurg vs. Phillips, 57 Mo., 214.)

IV. The recitation that the deed is also made "in consideration of the agreement of the party of the second part, to erect or cause to be erected a house, and the lots" conveyed manifestly has nothing to do with this suit. The deed without dispute was intended to operate at once. There is a money consideration specified. And this suit is not between the parties to that agreement. From the lapse of time it is evident that was settled between the parties, and if not, these parties have nothing to do with it.

SHERWOOD, Judge, delivered the opinion of the court.

In 1855, one Chester Hubbard, being the owner of lots 6 .and 7, in block No. 2, of Hubbard's addition to the town of Kansas, (now Kansas City) in consideration of the sum of $200, the receipt of which was acknowledged, " and in consideration of the agreement of the said party of the second part (one Asa Lawton) to erect or cause to be erected one certain building on the lots," conveyed them to Lawton by an instrument which, but for its lack of seal, would have been a deed, with the usual covenants of warranty, and perfect in all its parts. Within five months from the date of this imperfect instrument, Lawton, by a similar instrument, with the exception that it was in all respects a complete deed, con veyed the same lots to one Kersey Coates. The consideration expressed in the last named instrument to have been received, was $250, together with the further consideration recited in terms almost identical with those employed as above mentioned, and absolutely the same in effect. Hubbard signed his name by an attesting witness to this deed. In 1861, Hubbard died. In the following year Coates conveyed the undivided one-half of the lots to Mordicia Lawrence and the residue to John Simmons, who subsequently dying, Coates, as the executor of his last will, conveyed the portion of his testator in the lots to the plaintiff in June, 1868, for the sum of $3,800, and on the same day Lawrence conveyed his share of the premises to the plaintiffs, for $1,500. Hubbard left at his death two heirs, one of whom, a minor, is a defendant in this suit. The other heir, J. Reuben Hubbard, in 1870, conveyed to defendant (Halley) the undivided one-half of the lots in suit. Possession of the premises was never taken by Lawton, nor by those claiming under him, nor did he or they erect a building of any description on the lots. "A small temporary shanty" was put up in the year 1872, but by whom does not appear.

This proceeding was instituted in 1871, for the purpose of divesting the legal title out of the defendants and vesting it in plaintiff, on the ground of mistake made by Hubbard in

failing to affix a seal to the conveyance to Lawton, and that Halley bought with full notice of the mistake and with the desire to cheat and defraud plaintiffs, with whose rights he was well acquainted at the time of his purchase. The chief allegations of the petition, as to notice, etc., were denied in the answer of the defendant (Halley), and the usual answer was made by the guardian *ad litem* of the minor heir.

I.

As it was not shown at the trial that Halley was a purchaser for a valuable consideration, it is needless to discuss the sufficiency of the certificate of acknowledgment appended to the instrument executed by Hubbard to Lawton, for only those standing in the attitude of purchasers for value, can take advantage of defects of the nature alluded to. (Bishop vs. Schneider, 46 Mo., 472, and cases cited.)

II.

The doctrine that courts of equity will interpose for the re-·lief of a vendee who has taken a defective conveyance, and will compel the vendor and his heirs and all other persons claiming under him by the act of the law, although without notice, and even persons claiming as purchasers for valuable consideration, if with notice, to make good the conveyance, is one which has found in those courts frequent recognition, and been illustrated by a long line of decisions far too numerous for citation. (2 Sugd. Vend., p. 1022 ; Wadsworth vs. Wendell, 5 Johns. Ch., 224, and cases cited.)

In the case last cited the defective conveyance was imperfect in the precise particular that the one before us is, *i. e.*, it only lacked a seal, and Chancellor Kent held that as the instrument was in form a deed with the single exception that it lacked a seal, and as it concluded with the words, "In witness whereof I have hereunto set my hand and seal," the intention to affix the seal was apparent, and the omission to do so a mere mistake, concerning which redress could be afforded. And it was accordingly decreed in that case that the subsequent purchasers, with notice, should convey the legal title to the first purchaser. And were the matter of mistake and

its correction by any appropriate decree which would accomplish the desired object and procure the relief sought, the single element in the case at bar, no hesitation could be felt while complying with the plaintiff's prayer, since it will be readily seen that the defendants are not in position to resist successfully a decree based alone upon the above stated grounds. There are, however, other ingredients in this case which must exert a controlling influence in the endeavor to arrive at a correct conclusion, and we will briefly advert to and discuss them.

### III.

It is obvious from previous statements that the plaintiff, as his title at best is but an equitable one, in effect, although not praying for it in direct terms, seeks a decree for specific performance. This being the case, he will be held amenable to those rules which govern when relief of that character is asked. Among these rules are:

That the contract whose specific enforcement is sought, should be certain, mutual, and capable of being performed. (Sto. Eq. Jur., §§ 723, 736, 751 ; Fry Spef. Perf., 133.)

And the certainty requisite in a contract which is the subject of adjudication in a court of equity, is necessarily greater than if in a suit at law damages were demanded for its breach, for in the latter forum it is in general, sufficient for a recovery to establish the negative proposition of non-performance, while in a court of equity it is an indispensable requisite that the contract should possess terms of such reasonable certainty as to enable that court, by having regard to the subject matter and attendant circumstances of the contract, to determine the force and effect of the terms employed, in order to decree their specific execution. Now, it is obviously impossible to comprehend the meaning of the agreement incorporated in the deed from Hubbard to Lawton, and in the deed of the latter to Coates. "A certain building" is to be erected upon the lots, but the dimensions, quality and material thereof are altogether conjectural. Nor is that contract mutual ; that is, it is not such as might at the time of its formation have been

enforced by either of the contracting parties against the others. And it is entirely immaterial what constitutes this lack of mutuality, whether resulting from personal incapacity, the nature of the contract, or any other cause; whenever the absence of the essential element is ascertained to exist on the part of one party, and for that reason is incapable of being enforced against him, that party is equally incapable of enforcing the contract against the other, although no difficulty should attend its execution in the latter way. And this is plainly the state of the case here. Though Lawton or Coates would have had no obstacles in their way as to the part Hubbard was to perform, yet he on his part could never have obtained against either of them the equitable relief or specific execution, by reason of the great uncertainty of the terms of agreement on their part. The doctrine here asserted is as thoroughly settled as any in equity jurisprudence. (Fry Spef. Perf., 133, and cases cited.)

## IV.

But the contract before us could not be enforced for another very sufficient reason. A court of equity will not enforce "building contracts," because it is said "If one will not build another may." And although in the earlier cases a different view obtained, yet in the later ones that doctrine is expressly denied. (Sto. Eq. Jur., §§ 725, 726.) And though Mr. Justice Story does not yield assent to what he admits is the current of modern adjudication, and offers much ingenious reasoning in support of his views, still even he insists that the contract to build should possess "sufficient definiteness and certainty." (*Id.*, § 728.) And Lord Rosslyn, whose views meet Judge Story's cordial approbation, held that where "the contract to build or re-build had a definite certainty as to size, materials, etc., it ought to be decreed in equity to be specifically performed. But if it was loose, general or uncertain, then it ought to be left to a suit for damages at law." (Mosley vs. Virgin, 3 Ves. Jr., 185.) But since, as already seen, the present contract is of such a vague and indefinite nature, it is a matter of no moment, so far as the case at bar

is concerned, whether we adhere to the earlier or later authorities; in either event specific enforcement must be denied, and our refusal in this regard will, for the reasons stated, find ample support both in the elder and in the more recent adjudications.

## V.

If, however, the agreement under consideration lacked none of the essential requisites we have mentioned, still an insuperable barrier to the relief sought is found in the fact that no compliance or even pretended compliance with the terms of the agreement, loose and general as they are, is urged or even alleged on the part of the plaintiff. And there is not a single palliating circumstance to extenuate the conduct of the plaintiff in thus entering a court of equity, and without showing the slightest performance on his part to entitle him to equitable relief, asking the active interference of that court in his behalf, while disregarding and trampling upon the maxim that " he who seeks equity must do equity." And the argument which might be urged that but for the mistake made the plaintiff would now be the possessor of the legal title to the premises in suit, is without force, as in consequence of that mistake he is in precisely the same situation as if the assignee of a title-bond, and must, therefore come under the rigid application of that maxim whose teachings he, and those under whom he claims, have so persistently ignored."

## VI.

The evidence in this case is extremely meager, but if we are to be guided by inference, it may perhaps be not unfairly assumed that the contract between Hubbard and Lawton was entered into by the former with the view of enhancing the value and attractiveness of his adjacent property, by causing the erection of a building on the lots sold. If this assumption be correct, owing to the great change in the circumstances attendant on the formation of the contract and the greatly enhanced value of the lots in question, the time has long since passed in which the benefits intended by Hubbard

to be derived from a building on the lots can now be realized.

The judgment is reversed and the cause remanded. Judge Hough not sitting. The other judges concur.